IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REVA T., <br><br> Claimant, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Respondent. | No. 21 CV 5475 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Claimant Reva T.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 8]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have filed cross-motions for summary judgment [ECF Nos. 15, 19] pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below, Claimant's

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

Motion for Summary Judgment [ECF No. 15] is denied and the Commissioner's Motion for Summary Judgment [ECF No. 19] is granted.

## PROCEDURAL HISTORY

On February 7, 2019, Claimant filed a Title II application for DIB alleging disability beginning on May 31, 2018. (R. 212–17). Her claim was denied initially and upon reconsideration, after which she requested a hearing before an Administrative Law Judge ("ALJ"). (R. 69–114, 128). On January 26, 2021, Claimant appeared by telephone and testified at a virtual hearing before ALJ Carla Suffi. (R. 40–61). ALJ Suffi also heard telephonic testimony on that date from impartial vocational expert ("VE") Thomas Gusloff. (R. 61–67). On February 4, 2021, ALJ Suffi denied Claimant's claim for DIB. (R. 10–32).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. See 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since February 7, 2019, her alleged onset date. (R. 15). At step two, the ALJ found Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. 404.1520(c). *Id.* Specifically, Claimant has mild bilateral degenerative joint disease of the hips, depression, anxiety, and substance abuse. (R. 15–17). The ALJ also acknowledged an auto-immune disease as a non-severe, medically determinable impairment, but concluded it did not significantly limit Claimant's ability to perform basic work activities. (R. 16). The ALJ also acknowledged two non-medically determinable impairments of lumbar back pain and possible carpal tunnel syndrome. (R. 16–17).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17–19). In particular, the ALJ identified listings 1.02, 12.04, and 12.06. (R. 17). Regarding listing 1.02 for major dysfunction of a joint, the ALJ compared the listing criteria with the medical evidence and determined the listing was not satisfied because the medical evidence did not support the use of an assistive device that would limit the functioning of both upper extremities, nor did the record establish Claimant was unable to ambulate effectively, as defined in 1.00B2b, for a continuous period of 12 months. *Id.* As for Claimant's mental impairments and listings 12.04 and 12.06, the ALJ evaluated the "paragraph B" criteria and determined that Claimant had moderate limitations in all four broad areas of functioning: understanding, remembering, or applying information, interacting with others, concentration, persistence, or maintaining pace, and adapting or managing oneself. (R. 18–19). The ALJ also assessed the "paragraph C" criteria and determined those criteria were not supported by the medical evidence. (R. 19).

The ALJ then found Claimant had the residual functional capacity ("RFC") to:

"perform medium work as defined in 20 CFR 416.967(c) except the claimant could only occasionally climb ladders, ropes, and scaffolds; and frequently climb ramps and stairs, stoop, crouch, and crawl. The claimant can understand, remember, carry out, and adapt to the demands of only simple, routine, repetitive work tasks and make simple work related decisions with no work tasks that require interaction with the general public. The claimant can work in constant proximity to coworkers, but with no work on joint or collaborative work tasks; can tolerate occasional changes to the work routine and setting, but would do best in a job where the tasks and expectations do not change daily; and can never perform fast paced production line work tasks that are timed, only goal oriented work tasks" (R. 19–20).

Based on this RFC, the ALJ reviewed Claimant's earning history and hearing testimony and found at step four that Claimant had past relevant work as a hand packager. (R. 26). Crediting the VE's testimony, the ALJ concluded that the demands of Claimant's past work exceeded her residual functional capacity, and so Claimant would not be able to perform that past relevant work as actually or generally performed. *Id.* The ALJ then concluded at step five that, considering Claimant's age, education, past work experience, and residual functional capacity, she is capable of performing other work within the national economy and that those jobs exist in significant numbers. (R. 27). Specifically, the VE's testimony, on which the ALJ relied, identified jobs at the medium exertional level including laundry laborer, general helper, and dryer attendant. *Id.* The ALJ then found Claimant was not under a disability from February 7, 2019, Claimant's disability onset date, through February 4, 2021, the date of the ALJ's decision. (R. 27–28). The Appeals Council declined to review the matter on August 24, 2021, (R. 1–6), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. 42 U.S.C. § 405(g); *see, e.g., Smith v. Berryhill*, 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

When a claimant files an application for disability benefits, he or she bears the burden under the Social Security Act of bringing forth evidence that proves his or her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 147–48

4

(1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy."

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920). Claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also,* 42 U.S.C. § 405(g); *Fowlkes v. Kijakazi*, 2021 WL

5

5191346, at *2 (7th Cir. 2021). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

However, even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not build a "logical bridge" from the evidence to the conclusion. *Wilder,* 22 F.4th 644 (citing *Butler,* 4 F.4th at 501). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *see also, Gribben v. Kijakazi,* 2022 WL 59404, at *2 (7th Cir. 2022) ("We do not reweigh the evidence or resolve conflicts in it."). "[O]nly if the record compels a contrary result" will the court reverse the ALJ's decision. *Fowlkes*, 2021 WL 5191346, at *2 (quoting *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010)).

## ANALYSIS

### I.   Claimant's RFC

The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an

6

equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Madrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014), as amended (Aug. 20, 2014) (quotation omitted); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015); SSR 96-8p; 20 C.F.R. § 416.945(a).

Claimant argues the RFC is flawed in this case because it does not adequately account for her bilateral hip pain and moderate limitations in the four broad areas of mental functioning. In support of this argument, however, Claimant does little more than point to isolated facts and argue the ALJ should have weighed that evidence differently. The Seventh Circuit recently and unequivocally disavowed such an approach, explaining that "[j]ust as an ALJ may not cherry-pick evidence that supports her conclusion, claimants cannot simply point to evidence the ALJ considered and rejected and ask this court to infer greater limitations from it. Instead, they must engage with the ALJ's analysis and show why it was either illogical or unsupported." *Dzafic v. Kijakazi*, 2023 WL 2536340, at *5 (7th Cir. 2023) (citing *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010)). Because Claimant does not identify any error in the ALJ's RFC analysis, and for the reasons explained below, remand is not required.

a. **Physical Limitations**

The ALJ conducted a fulsome review of the medical evidence in this case and determined Claimant could perform work at the medium exertional level despite her physical limitations, except that she could only occasionally climb ladders, ropes, and scaffolds, and only frequently climb ramps and stairs, stoop, crouch, and crawl. (R. 19–20). Claimant identifies three pieces of evidence that, from her perspective, compel RFC restrictions beyond those included by the ALJ: her subjective testimony that she experienced hip pain, a treatment note from May 1, 2019 documenting bilateral hip pain, and a diagnosis of hip osteoarthritis. Claimant's Brief [ECF No. 15] at 10. But the ALJ in fact discussed all three pieces of evidence Claimant now says she ignored, and she further explained, with support from the record, how she accounted for those pieces of evidence in the RFC. (R. 22–25).

First, the ALJ highlighted the importance of the diagnosis Claimant now says the ALJ ignored – mild bilateral degenerative disease of the hips – when she characterized it as a severe impairment that significantly limited Claimant's ability to perform basic work activities. (R. 15). So, too, did the ALJ credit the fact that Claimant sought treatment on May 1, 2019 for hip pain, and that medical imaging showed mild bilateral degenerative changes on that date. (R. 22). But the ALJ permissibly contrasted that visit with Claimant's treatment records prior to May 1, 2019, which did not document any incidences of hip pain, and Claimant's visit with her treating physician in March of 2019, at which she sought help applying for social security benefits but did not complain of any hip pain. *Id.*

8

The ALJ similarly compared Claimant's May 1, 2019 visit with her July 15, 2019 internal medicine consultative examination with Dr. Liana Palacci, at which Claimant did not report any hip pain, nor did a physical examination reveal any abnormalities in Claimant's hip range of motion, gait, ability to tandem walk, walk on her heels and toes, or squat. (R. 22–23). Indeed, Dr. Palacci had an even less restrictive view of Claimant's limitations than the ALJ, in that Dr. Palacci believed Claimant required little to no physical limitations and was capable of sitting, standing, and walking greater than 50 feet without an assistive device, handling objects, lifting, and carrying. (R. 22). Contrary to Claimant's assertions, the ALJ discounted Dr. Palacci's opinion specifically because it did not account for "the objective signs on the imaging of the hips" and the record evidence of Claimant's self-reported hip pain. (R. 22–23).

The ALJ reasonably concluded that Claimant's diagnosis of mild bilateral degenerative disease of the hips, her subjective testimony that she experienced hip pain, and a treatment note on May 1, 2019 documenting bilateral hip pain could be accommodated by the restrictions now contained in the RFC. The ALJ considered the hip-related limitations Claimant now says compel remand, reviewed the relevant medical records and opinion evidence, and did not find that Claimant's hip condition prevented full-time work at a medium exertional level with specific, tailored postural accommodations. Claimant may disagree with the ALJ's conclusion, but the "RFC is a legal—and not a medical—decision that is exclusively within the ALJ's authority to make[.]" *Michael B. v. Berryhill*, 2019 WL 2269962, at *6 (N.D. Ill. 2019). The ALJ

did enough here to build a logical bridge to her conclusion and supported that conclusion with substantial evidence.

### b. Mental Limitations

Claimant also charges that the ALJ ignored her moderate limitations in the four broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. § 404.1520a. These moderate limitations, Claimant vaguely asserts, cause a need for off-task time not incorporated into the RFC. However, as explained below, the ALJ did accommodate Claimant's mental limitations in the RFC, though she admittedly did not assign to them the significance that Claimant would prefer when she determined these limitations were not work-preclusive.

The ALJ accommodated Claimant's mental limitations in the RFC by restricting her to work in which she could "understand, remember, carry out, and adapt to the demands of only simple, routine, repetitive work tasks and make simple work related decisions with no work tasks that require interaction with the general public…work in constant proximity to coworkers, but with no work on joint or collaborative work tasks…tolerate occasional changes to the work routine and setting, but would do best in a job where the tasks and expectations do not change daily…and can never perform fast paced production line work tasks that are timed, only goal oriented work tasks." (R. 19–20). Claimant does not articulate with any specificity why the above limitations do not accommodate her mental limitations supported by the record, instead relying on *DeCamp v. Berryhill*, 916 F.3d 671 (7th

10

Cir. 2019), for the proposition that moderate limitations in concentration, persistence, or pace cannot be accommodated by a restriction to simple, routine tasks. Claimant's Brief [ECF No. 15] at 12–13. But neither *DeCamp,* nor other Seventh Circuit opinions on this familiar issue, adopt the bright-line rule Claimant now endorses. Nor would such a rule be applicable to a case like this, where the ALJ went far beyond the mantra of "simple, routine tasks" sometimes criticized by the Seventh Circuit by incorporating limitations specifically tailored to concentration and persistence issues ("simple, routine, repetitive work tasks and make simple work related decisions… tolerate occasional changes to the work routine and setting, but would do best in a job where the tasks and expectations do not change daily") and pace-related expectations ("can never perform fast paced production line work tasks that are timed, only goal oriented work tasks"). (R. 19–20). The fact-specific question to be answered in each case involving limitations in the four broad areas of mental functioning is whether the ALJ has adequately explained, with support from the medical record, how the restrictions contained in the RFC – simple, routine, and repetitive tasks, or otherwise – addressed the claimant's specific concentration, persistence, pace, or other mental limitations. *Christopher G.* v. Kijakazi, 2022 WL 1989119, at *4 (N.D. Ill. 2022). "Even generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record." *Urbanek v. Saul,* 796 F. App'x 910, 914 (7th Cir. 2019) (quoting *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019)).

11

Here, the ALJ reviewed the complete picture of Claimant's limitations before formulating the RFC, including Claimant's deficiencies in concentration, persistence, or pace. *Moreno*, 882 F.3d at 730. She painstakingly reviewed the records of Claimant's treating physicians, as well as opinions from two state agency consultants, a psychological consultative examiner, and an internal medicine consultative examiner, affording varying degrees of persuasiveness to those opinions. (R. 22–26). She also evaluated Claimant's subjective symptom statements, (R. 20–21), and after a longitudinal assessment of the above-described evidence, the ALJ ultimately concluded that Claimant's moderate limitations in the four broad areas of mental functioning could be accommodated by the restrictions now contained in the RFC. "The hypothetical possibility that certain impairments could lead to certain functional limitations," which is all Claimant offers here, "is insufficient to disturb the ALJ's conclusions, where evidence of those functional limitations was not offered to the Commissioner or on appeal before this Court." *Charmaine R. v. Saul,* 2021 WL 83737, at *4 (N.D. Ill. 2021).

In sum, the ALJ built a logical bridge between her acknowledgment of Claimant's mental limitations and the restrictions contained in the RFC, and she supported that RFC with substantial evidence. That is enough.

## II.  Step Five and a "Significant Number of Jobs"

Finally, Claimant argues that the ALJ did not meet her burden at step five to establish that Claimant could perform work existing in significant numbers in the national economy. One job, existing in in "significant numbers" in the national economy, is enough to meet the Commissioner's burden. *See* 20 C.F.R. § 404.1566

12

("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications"). "Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered 'work which exists in the national economy.'" § 404.1566(b).

Here, the ALJ, relying on the VE's testimony, identified three jobs that, considering Claimant's age, education, past work experience, and residual functional capacity, Claimant could perform: laundry laborer (50,000 jobs in the national economy), general helper (30,000 jobs in the national economy), and dryer attendant (20,000 jobs in the national economy). (R. 27). Both the Supreme Court and the Seventh Circuit have rejected a categorical approach to the question of how many jobs constitute a significant number. Instead, it is "within the ALJ's discretion to determine whether jobs exist only in very limited numbers," a determination that "does not depend upon the establishment of a standard for significance." *Milhem v. Kijakazi*, 52 F.4th 688, 695 (7th Cir. 2022). The Seventh Circuit has separately commented in *Mitchell*, *Collins*, and *Kuhn* that 30,000 jobs, 55,000 jobs, and 89,000 jobs in the national economy was significant. *Kuhn v. Kijakazi*, 2022 WL 17546947, at *3 (7th Cir. 2022); *Mitchell v. Kijakazi*, 2021 WL 3086194, at *3 (7th Cir. 2021); *Collins v. Berryhill*, 743 F. App'x 21, 25–26 (7th Cir. 2018). Based on the record in this particular case, and the ALJ's conclusion that Claimant is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the Court finds that a reasonable person would accept as significant

13

100,000 total jobs existing in the national economy. (R. 27–28); *Kuhn*, 2022 WL 17546947, at *3; *Milhem*, 52 F.4th at 695. The Court therefore sees no error requiring remand at step five.

## CONCLUSION

Accordingly, for all these reasons, Claimant's Motion for Summary Judgment [ECF No. 15] is denied and the Commissioner's Motion for Summary Judgment [ECF No. 19] is granted.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 30, 2023